UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JASON MATTHEW GRONDON,

                Plaintiff,                        Case No. 12-cv-13158

v                                       Honorable Thomas L. Ludington

KENNETH McKEE,

                Respondent.

_____/

OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO
APPEAL IN FORMA PAUPERIS

      Petitioner, Jason Matthew Grondon, is confined at the Bellamy Creek Correctional Facility in Ionia, Michigan. He has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Washtenaw County Circuit Court of second-degree murder, Mich. Comp Laws § 750.317; stealing or retaining a financial transaction device without consent, Mich. Comp Laws § 750.157n(1); illegal use of a financial transaction device, Mich. Comp Laws § 750.157q; and larceny less than $ 200.00, Mich. Comp Laws § 750.356(5). Petitioner was sentenced to thirty four to fifty one years imprisonment on the second-degree murder conviction, two to four years in prison on each of the financial transaction device convictions, and ninety three days in jail on the larceny conviction.

      Petitioner contends that the trial court erred in failing to suppress his confession on the ground it was not voluntarily made, that he was denied a fair trial because of prosecutorial misconduct, and that his sentencing guidelines were incorrectly scored. The respondent filed an answer to the petition asserting that the claims lack merit or are procedurally defaulted. The

Court agrees that Petitioner's claims are either meritless or procedurally defaulted, and therefore the petition will be denied.

## I

Petitioner was convicted of the above offenses following a jury trial in the Washtenaw County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed to be correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was convicted of murdering his uncle, Robert Green, and of taking and using Green's debit card without consent to make numerous purchases thereafter. A car resembling defendant's car was visible on surveillance video at a gas station at the approximate time that Green's debit card was used to make a purchase there. And, when he was arrested, defendant had dried blood on his pants and on his hands, which DNA analysis later established came from Green. During police questioning, defendant confessed to striking Green in the head repeatedly with a pipe and to disposing of the pipe by throwing it out of his car window while driving away from Green's home.
>
> *************************************************************
>
> The medical examiner testified that Green's "scalp was split" by five blows with a "linear rod-like object," possibly a bar or a pipe. Green was also struck across the right eye socket and eyelid and sustained superficial injuries on his lower right leg. Cassin opined that Green died from the multiple blunt force impacts to his head, which caused bleeding on the brain surface and acute swelling of the brain. The medical examiner said that it was "impossible for [him] to say that any one injury did or might have caused this death." There was also evidence that defendant chased Green around his basement, that Green dragged himself across the basement floor, and that defendant continued to beat Green after he got wedged into a corner.

*People v. Grondon*, No. 292494, * 1, 5 (Mich.Ct.App. November 9, 2010).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 489 Mich. 898, 796 N.W.2d 81 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

- 2 -

I.     The state court erred in its decision not to overturn Petitioner's conviction because the trial court allowed a coerced, involuntary confession to be admitted into evidence.

II.    The prosecutor committed prejudicial misconduct in closing argument.

III.   The trial court abused its discretion in scoring 50 points for Offense Variable 7 for sadism, torture, or excessive brutality.

## II

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-*

*El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*.

### III

### A

Petitioner first contends that the trial court erred in failing to suppress his confession on the grounds that it was involuntary. Petitioner claims that his confession was involuntary because he was intoxicated on cocaine, was in excruciating pain before his arrest and during his two police interrogations. He contends that he had kidney stones and was unable to urinate, was not provided medical treatment until he confessed, and had the subjective belief that he would not receive medical attention until he confessed.

Petitioner was arrested by the police at a gas station at about 12:45 a.m. on January 29, 2008. The police interviewed Petitioner briefly that morning, before leaving him to rest before

re-interviewing Petitioner later that day from about 3:10 p.m. to 3:55 p.m.  During this second

interrogation, Petitioner admitted to killing his uncle.  During the second half of this second

interview, Petitioner began complaining of pain from a kidney stone.  As a result, the detective

stopped the interrogation and took Petitioner back to his cell.

The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant does not dispute that he confessed while in custody and after receiving a Miranda warning.  Likewise, he does not dispute that the waiver of his right against self-incrimination was knowing and intelligent.  At issue, then, is whether defendant's confession was voluntary.
>
> Contrary to defendant's claims, there was no evidence presented that the police withheld medical treatment in order to force defendant to confess.  The videotaped portion of the interview did not show coercive conduct on the part of the police officers, or that defendant made statements in response to coercion. Although contradicted by defendant, Saline Police Department Detective Don Lupi specifically denied telling defendant that he would only receive medical treatment if he answered questions.  The fact that police officers asked defendant if he could answer a few more questions before receiving treatment, and that defendant responded affirmatively, weighs heavily against defendant's argument that his statements were involuntary. Moreover, at no time during the interview did defendant indicate that he wanted the interview to stop for any reason.  Also, that defendant was able to stand up and demonstrate how he struck Green suggests that his pain was not as severe as he now claims.  Finally, although there was evidence that defendant had ingested crack cocaine, that occurred at least 15 hours before the interview at issue.  Moreover, drug intoxication is not dispositive on this issue.
>
> Additionally, other factors support the trial court's determination that the confession was voluntary.  Defendant had been in custody for less than 15 hours, and the interrogation was short, lasting only 45 minutes.  He had committed other offenses and previously served time with the Michigan Department of Corrections, so he was likely familiar with police procedure and techniques.  Considering the totality of the circumstances, the trial court did not err in concluding that defendant's statements were made voluntarily.

*Grondon*, Slip. Op. at 2-3 (internal citations and footnote omitted).

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985).  The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985).  An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards*, 35 F. 3d 1062, 1067 (6th Cir. 1994)(citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, no less than physical, coercion or pressure by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

In determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. at 112. These circumstances include:

      1. police coercion (a "crucial element");

      2. the length of interrogation;

      3. the location of interrogation;

      4. the continuity of the interrogation;

      5. the suspect's maturity;

      6. the suspect's education;

      7. the suspect's physical condition and mental health;

      8. and whether the suspect was advised of his or her Miranda Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, without coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Petitioner first contends that his confession should have been suppressed because he had ingested cocaine prior to his arrest. Detective Don Lupi of the Saline Police Department testified at the *Walker* hearing[1] that he first met Petitioner at about 2 a.m. on the morning of Petitioner's arrest. Petitioner told Detective Lupi that he had used cocaine on the night of his arrest as well as the day before. Petitioner was taken back to his cell at that time. (Tr. 10/24/08, pp. 52-53, 62, 73, 89). Detective Lupi re-interviewed Petitioner at about 3:10 p.m. (*Id*., pp. 8-9, 52, 63). There was no evidence presented that Petitioner was still under the influence of cocaine at the time of this second interrogation.

In the present case, there is no evidence that Petitioner was still intoxicated at the time that he spoke with Detective Lupi on the afternoon of January 29th, nor is there any evidence of police coercion. In the absence of any evidence that Petitioner was still under the influence of cocaine or that the police had engaged in coercive activity, Petitioner cannot show that his confession should have been suppressed merely because he claimed that he had ingested cocaine the night before his arrest. *See Abela v. Martin*, 380 F. 3d 915, 928 (6th Cir. 2004).

Petitioner next argues that his confession should have been suppressed because he was suffering from extreme pain at the time of the second interrogation due to a kidney stone and the inability to urinate.

The trial judge rejected this portion of Petitioner's claim. In so doing, the judge noted that she had actually reviewed the videotaped portion of Petitioner's confession. Although there

---

[1] *People v. Walker (On Rehearing)*, 132 N.W.2d 87 (Mich. 1965).

were "signs of discomfort intermittently" during the interview by Petitioner, that he was bent over at times and showed some degree of pain, nothing on the tape showed coercive conduct on the part of the officers or that Petitioner made his confession in response to coercion and his insisting on medical treatment. (Tr. 11/3/08, pp. 4-5).   Although Petitioner had made some requests for medical treatment, the judge noted that Petitioner at no point asked the detectives to stop questioning him nor did he state that he wanted to leave and see a doctor.   The judge further noted that in response to what she thought were "gentle questions" on the part of the detectives, in which they asked Petitioner whether he was willing to answer a few more questions, Petitioner responded that he was willing to do so. (*Id*., p. 5).

In the present case, even if Petitioner was in pain as a result of kidney stones and an inability to urinate, this would not render his confession involuntary.   The detectives interrogated Petitioner for only forty five minutes.   The detectives asked Petitioner if he could answer a few more questions before receiving medical treatment and he responded affirmatively.   There is nothing from the record that suggests that Petitioner asked for the interview to stop because he was in pain.   There was no evidence of coercive activity on the part of the police.   The fact that Petitioner was able to stand during the interrogation and demonstrate to the detectives how he struck the victim suggests that the pain may not have been as excruciating and unremitting as Petitioner claims.

While Petitioner may well have been in some pain, his situation is markedly different from those cases in which courts have held that a defendant's physical condition rendered his confession involuntary. *See Mincey v. Arizona*, 437 U.S. 385, 398-402 (1978)(confession was involuntary where officers questioned the defendant over his objection for four hours while he was incapacitated and sedated in an intensive-care unit after being shot by police); *Greenwald v.*

*Wisconsin*, 390 U.S. 519, 520-21 (1968)(confession was involuntary where officers questioned defendant for more than 18 hours while depriving him of food, sleep and medication); *Beecher v. Alabama*, 389 U.S. 35, 38 (1967)(confession involuntary where police, after shooting the defendant, ordered him at gunpoint to confess or be killed); *Davis v. North Carolina*, 384 U.S. 737, 745-47 (1966)(confession involuntary where officers interrogated the defendant over 16 days and held him incommunicado in a closed cell without windows and with limited food).

In contrast to these cases, Petitioner was interviewed by the police for less than one hour. The police did not engage in any coercive activity.  Petitioner indicated a willingness and an ability to continue answering a few more questions from the police.  Because Petitioner's situation was not "sufficiently analogous to the grave medical conditions and coercive environments in *Mincey* and *Beecher*," Petitioner has failed to show that his medical condition rendered his confession involuntary so as to entitle him to habeas relief. *See Abela v. Martin*, 380 F. 3d at 929.

With respect to Petitioner's related claim that he confessed only because the detectives indicated that he would not receive medical treatment until he confessed, Detective Lupi specifically denied threatening to withhold medical treatment from Petitioner until he confessed. (Tr. 10/24/08, pp. 56-57).  Although the trial court judge did not explicitly address the claim that the detectives threatened to withhold medical treatment unless Petitioner confessed, by rejecting Petitioner's claim that his confession was involuntary, the judge implicitly found that no threats to withhold medical treatment had been made to induce Petitioner's confession.  In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. §

2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. at 112. The presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 Fed. Appx. 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F. 3d 1302, 1310 (6th Cir. 1996)). Moreover, the Michigan Court of Appeals, in rejecting Petitioner's claim, did so in part by finding that there had been no threats by Detective Lupi to withhold medical treatment unless Petitioner confessed or promises to provide him treatment if he confessed. The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001)(citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). The trial court judge and the Michigan Court of Appeals rejected Petitioner's factual allegations that the police promised him medical care only if he confessed, and Petitioner has failed to offer clear and convincing evidence to the contrary; thus, Petitioner has not shown that his confession was involuntary on this basis. *See Brown v. Jackson*, 501 Fed. Appx. 376, 378-79 (6th Cir. 2012).

Finally, Petitioner contends that his confession was involuntary because he subjectively believed that he would only be given medical treatment if he confessed.

A confession, to be admissible, must be free and voluntary and it cannot be the result of any direct or implied promises, however slight. *See Shotwell Mfg. Co. v. U.S.*, 371 U.S. 341, 347 (1963). However, Petitioner's subjective belief that he would receive medical treatment if he confessed is insufficient to establish that Petitioner's statement was coerced. *See U.S. v. Hopkins*, 295 F.3d 549, 552 (6th Cir. 2002).

- 10 -

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to conclude that Petitioner's confession was voluntary. *See McCalvin v. Yukins*, 444 F. 3d 713, 720 (6th Cir. 2006). Petitioner was advised of his Miranda rights, had prior familiarity with criminal procedures due to his past contacts with the criminal justice system, he was only in custody for fifteen hours, and the interrogation lasted only forty five minutes. There was no evidence that the detectives physically assaulted Petitioner or made any threats towards him. Moreover, given the factors supporting a finding that Petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding Petitioner's confession to have been voluntary was a reasonable application of federal law. *Id.*

In addition, even if the statement should have been suppressed, Petitioner is unable to establish that he is entitled to habeas relief in light of the fact that admission of this statement against him at trial was harmless error at most. Harmless-error analysis applies to coerced or involuntary confessions. *Arizona v. Fulminante*, 499 U.S. at 295. In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

In the present case, there was sufficient evidence, absent Petitioner's confession, to sustain his convictions. It was undisputed from the physical and medical evidence that the victim had been brutally assaulted. The victim's debit card had been stolen. A car resembling Petitioner's vehicle was seen on a surveillance video at a gas station at the approximate time that the victim's debit card was used to make a purchase there. Significantly, when Petitioner was arrested, he had the victim's dried blood on his pants and on his hands. In light of this

significant evidence of guilt, the admission of Petitioner's confession was harmless error at most. Petitioner is not entitled to habeas relief on his first claim.

**B**

Petitioner next contends that he was deprived of a fair trial because of prosecutorial misconduct. He contends that the prosecutor injected her personal beliefs, denigrated the defense, and inflamed the jurors' passions against Petitioner in her rebuttal argument.

Respondent contends that Petitioner's prosecutorial misconduct claim is procedurally defaulted, because Petitioner did not preserve the issue by objecting in the state trial court and the Michigan Court of Appeals relied on this waiver to deny Petitioner's claim on his appeal of right.

The Michigan Court of Appeals found that Petitioner's claim of prosecutorial misconduct was unpreserved and reviewed the claim for plain error, because Petitioner had failed to object to the prosecutorial misconduct at trial. Finding none, the Michigan Court of Appeals rejected Petitioner's prosecutorial misconduct claim. *Grondon*, Slip. Op. at * 3.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F. 3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at the trial court level to preserve his claimed error

for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F. 3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if Petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F. 3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F. 3d 684, 693 (6th Cir. 2001). In addition, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[ ] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F. 3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002). If the last state court from which a petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice for the federal court to review the petition. *Rust*, 17 F. 3d at 161; *Williams v. Withrow*, 328 F. Supp. 2d 735, 750 (E.D. Mich. 2004).

Michigan law requires that a criminal defendant object to prosecutorial misconduct to preserve such a claim for appellate review. *See Burton v. Bock*, 320 F. Supp. 2d 582, 589 (E.D.

- 13 -

Mich. 2004)(citing *People v. Ullah*, 216 Mich. App. 669, 679; 550 N.W. 2d 568 (1996)); *See also People v. Stanaway*, 446 Mich. 643, 687; 521 N.W. 2d 557 (1994). Petitioner in this case does not dispute that this procedural rule was firmly established and regularly followed with respect to his prosecutorial misconduct claim before Petitioner's 2009 trial. In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, Petitioner had not preserved his prosecutorial misconduct claim. The fact that the Michigan Court of Appeals engaged in plain error review of Petitioner's prosecutorial misconduct claim does not constitute a waiver of the state procedural default. *See Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this Court should view the Michigan Court of Appeals' review of Petitioner's claim for plain error as enforcement of the procedural default. *See Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001). Petitioner's prosecutorial misconduct claim is procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *See also Gravley v. Mills*, 87 F. 3d 779, 784-85 (6th Cir. 1996). With respect to Petitioner's prosecutorial misconduct claim, Petitioner has neither alleged nor established cause to excuse his procedural default. When cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F. 2d 286, 289 (6th Cir. 1983).

Further, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal

- 14 -

insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing in this case.  Petitioner's prosecutorial misconduct claim is barred by procedural default and does not warrant habeas relief.

C

Finally, Petitioner claims that the trial court incorrectly scored fifty points for sadism or excessive brutality under Offense Variable 7 of the Michigan Sentencing Guidelines.

State courts are the final arbiters of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico*, 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003).  Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  "[I]n short,

- 15 -

petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).   Any error by the trial court in calculating his guideline score would not merit habeas relief.  *Id.*   Petitioner's claim that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of Petitioner's federal due process rights. *Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000).  Petitioner is not entitled to habeas relief on his third claim.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a

constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.  When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted. *Id*.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [ECF No. 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 12, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Jason Grondon #237510, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846 by first class U.S. mail on September 12, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS